SMITHFIELD IMPROVEMENT COMPANY v. COLEY-BARDIN.

(Filed 11 October, 1911.)

1. **Landlord and Tenant—Repairs to Leased Premises—Agreement.**
    The landlord is not required to keep the leased premises in repair in the absence of any agreement between the parties to that effect.

2. **Same—Implied Covenant.**
    A covenant on the part of the landlord is not implied, from the fact of a lease of a hotel, that he will keep the leased premises in repair or that they shall be fit for the purposes for which they are rented.

3. Landlord and Tenant—Lease—Hotel—Water Pipes—Plumbing—
   Damage to Lessee—Counterclaim.

   A landlord is not liable to the tenant, in the absence of an
   express agreement, for damages caused by the inefficient working
   of the water pipes and plumbing system installed in a hotel, the
   leased premises, and in his action for the rent, etc., such dam-
   ages may not be successfully set up by the tenant as a counter-
   claim.

APPEAL from *Whedbee, J.,* at March Term, 1911, of JOHN-
STON.

Summary proceeding in ejectment. The question of posses-
sion was not at issue, as defendant had surrendered possession.

At the close of the evidence the court instructed the jury to
return a verdict for the plaintiff for $163.50, $150 balance due
as rent and $13.50 amount due for pillows. It is admitted that
is the sum due plaintiff by defendant for rent and towels.

The defendant offered certain evidence tending to establish
a counterclaim, which was excluded, and defendant excepted.

*F. H. Brooks for plaintiff.*
*Abell & Ward for defendant.*

BROWN, J. Plaintiff leased by contract in writing to de-
fendant its hotel, including the waterworks and connections
used exclusively to supply it with water. This proceeding was
brought to eject defendant and recover balance of rent due
plaintiff. Defendant pleaded a counterclaim, viz., that under
the rental contract between the plaintiff and the defendant, the
plaintiff rented to the defendant the waterworks and all connec-
tions thereto belonging. That it was the duty of the plaintiff to
keep said waterworks and connections in proper repair and in
good condition, so that a supply of water could be had at all
times for necessary use in said hotel. That on account of the
carelessness and negligence of the plaintiff in not keeping said
waterworks and connections in proper repair and in good con-
dition, thereby cutting off the water supply necessary for use
in the said hotel, and in the failure to furnish water necessary
for the same, the defendant has been damaged. The defendant
offered evidence tending to prove that the waterworks and pipes

got out of order during her tenancy, that plaintiff neglected to repair them and that defendant was damaged thereby. His Honor excluded the evidence upon the ground that it was defendant's duty to repair the waterworks in the house during her tenancy, and not plaintiff's.

We have examined the written lease with care, and are unable to find any covenant in it by which the landlord binds himself to keep the property or the waterworks during the lease in repair. Whether the tenant obligated to do it is immaterial.

Without express stipulation in a lease, the law implies a covenant of quiet enjoyment upon the part of the landlord, and if the tenant be rightfully evicted by another he may recover damages; and this covenant extends to water and sewerage connections existing at date of lease. *Huggins v. Waters,* 154 N. C., 444.

Under the civil law, in case of tenancies for short terms the landlord was under implied obligation, without special agreement, to keep the premises in repair. 4 Kent Com., 110; *Felton v. Cincinnati,* 95 Fed. Rep., 336; *Viterbo v. Friedlander,* 120 U. S., 707. But under the common law it is well settled that, in the absence of any agreement between the parties, the landlord was under no obligation to his tenant to keep the demised premises in repair.

The common law considers such a lease as the one in evidence as the grant of an estate for years, to which the lessee takes title. The lessee is bound to pay the stipulated rent, notwithstanding injury by flood, fire, or other external cause. It required a statute of the State to relieve the lessee where the property is destroyed by fire.

By the common law the lessor is under no implied covenant to repair, or even that the premises shall be fit for the purpose for which they are rented. 3 Kent Com., 465; Brown Leg. Max. (3 Ed.), 213-214; *Fowler v. Batt,* 6 Mass., 63; *Doupe v. Genin,* 45 N. Y., 119; 2 McAdam on Landlord and Tenant, sec. 383; 1 Taylor on Landlord and Tenant, sec. 327; *Viterbo v. Friedlander, supra.*

156—17

*Chancellor Kent* states the distinction between the civil and common law as follows: "The Roman law made some compensation to the lessee for the shortness of his five-year lease, for it gave him a claim upon the lessor for reimbursement for his reasonable improvements. The landlord was bound to repair, and the tenant was discharged from the rent if he was prevented from reaping and enjoying the crops by an extraordinary and unavoidable calamity, as tempests, fire, or enemies. In these respects the Roman lessee had the advantage of the English tenant, for, if there be no agreement or statute applicable to the case, the English landlord is not bound to repair, or to allow the tenant for repairs made without his authority; and the tenant is bound to pay the rent, and to repair at his own expense, to avoid the charge of permissive waste."

"The rule of *caveat emptor* applies to leases," says the Encyclopædia, "and the landlord is not even under an implied obligation to remedy defects in the demised premises existing at the time of the demise. It follows, therefore, in the absence of any agreement on the part of the landlord to repair, a tenant cannot recover from the landlord the cost of repairs made by him, etc." 18 Am. and Eng., 215.

In regard to waterworks, it has been held in New York that when water pipes are arranged for an entire building occupied by different tenants, it is the duty of the landlord to keep the pipes in repair, or the failure to repair may amount to a constructive evictment. *Bank v. Newton,* 76 N. Y., 616.

But the Massachusetts court holds that a landlord is under no implied obligation to keep in repair water pipes used *exclusively* in carrying water to the part of the building demised to the tenant, and therefore is not liable to such tenant for leakage from such pipes. *McKeon v. Cutter,* 156 Mass., 296.

Upon a review of the record we find

No error.