BARNHILL, J., dissenting.
STACY, C. J., and WINBORNE, J., concur in dissent.
This is an action for actionable negligence brought by plaintiff against defendant alleging damage. The defendant denied negligence and set up the plea of contributory negligence.
The plaintiff in her complaint alleged, in part:
"That said steps at the time of plaintiff's first inspection of the premises, were made of brick, and that a number of the bricks were loose and a larger number had been removed from the tread of the steps, and that the dangerous condition of the steps was readily apparent to even a casual inspection; that in order to repair said steps it would be necessary to replace the bricks that had been removed and reset them in mortar, and reset in mortar the bricks that were loose. . . . That defendant sent workmen out to the premises to make said repairs, and that said workmen worked at said repairs from time to time during October and November, 1937, and announced that the job was completed some time after the first of December, 1937. . . . That on the night of December 31, 1937, or in the early morning of January 1, 1938, plaintiff and her husband were going down the steps, which were well lighted, and that plaintiff's husband had hold of plaintiff's arm, and that in going down the steps together, side by side, plaintiff's position on the steps was off the center and to the left side of said steps, and on a part of said steps that was off the regular tread of said steps and which had not been used by plaintiff since said repairs, and that as plaintiff stepped on one of the bricks, the brick turned under her foot and threw her violently down the steps, breaking and shattering the bone of her upper left arm, and that plaintiff was completely disabled, etc. . . . That the said defendant in making repairs to said steps, was negligent in that the said bricks on that portion of the steps from which plaintiff was precipitated, as hereinbefore set out, were not properly encased in mortar and were left in an insecure and loose condition, by reason of which carelessness and negligence the said steps were in an insecure and unsafe condition at the time of the said injuries, and which said negligence was the proximate cause of the injuries hereinbefore set out. . . . That the defendant was negligent and responsible for said damages, for that the *Page 419 
servants employed by it conformably to its specific contract to repair said steps, instead of properly repairing the same and properly setting the bricks in mortar, negligently and carelessly replaced several bricks on the side of the steps apparently without any mortar at all, and left them loose and freely movable, and at the same time left said steps with the appearance of having been properly repaired and in such a condition as would deceive any person into believing that the steps were safe and ready for use, and that said defendant's servants or employees stated that said steps had been completely repaired, and had announced that they had finished the job on the steps, leaving the plaintiff and her husband under the impression and secure in the feeling that the steps had been repaired as had been contracted by said defendant."
The defendant in its answer says: "The defendant says that plaintiff's husband took possession of said premises under said written agreement on October 6, 1937, and that shortly thereafter the defendant entered into an agreement with one W. R. Douglas, a reputable, reliable and competent builder and contractor to make certain repairs to said house, but said contract with the said Douglas did not include or embrace any repairs to the steps referred to in plaintiff's complaint. That the workmen referred to . . . were sent by the said Douglas and not by this defendant, and said workmen were employed and paid by the said Douglas and were working for the said Douglas, and this defendant had no authority or control over the said workmen. . . . Answering further the complaint the defendant again denies that it had any agreement with anyone with respect to repairs of said steps and did not authorize or ratify any such repairs. The defendant alleges that it had no knowledge whatever of any defect in said steps either before or after the occupancy of said premises by the tenant and the first notice or knowledge that the plaintiff had claimed damages on account of the injury referred to in the complaint was a letter from plaintiff's attorney dated December 14, 1938, or approximately one year after plaintiff's alleged injury. And in this connection the defendant alleges that at the time written agreement was entered into as hereinbefore alleged that there was no noticeable defect in said steps and that the use of said steps, perse, was in no way dangerous, and that there was nothing about the appearance of said steps to put either the plaintiff or the defendant on notice of the alleged condition of same."
In the further answer it is said: "That such repairs as the defendant undertook to make were done through an agreement with a reputable, competent and reliable contractor and builder. That the contract between said contractor and the defendant did not provide for any such repairs as alleged in the complaint and the defendant is advised and believes that said contractor did not in fact make, or attempt to make any repairs to said steps," etc. *Page 420 
The issues submitted to the jury and their answers thereto were as follows:
"1. Was the plaintiff damaged by the negligence of the defendant? Ans.: `Yes.'
"2. If so, did the plaintiff by her own negligence contribute to her injuries, as alleged in the answer? Ans.: `No.'
"3. What amount, if any, is plaintiff entitled to recover of the defendant? Ans.: `Two thousand ($2,000) Dollars.'"
The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
At the close of plaintiff's evidence and at the close of all the evidence, the defendant in the court below made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we can see no error.
This action is brought by plaintiff, a tenant, against the defendant, the landlord, for actionable negligence.
It is well settled in this jurisdiction, as was said in Salter v.Gordon, 200 N.C. 381 (382): "In the absence of an agreement as to repairs the landlord is not obligated to keep the building in repair for the benefit of his tenant. Improvement Co. v. Coley-Bardin, 156 N.C. 255;Fields v. Ogburn, 178 N.C. 407; Tucker v. Yarn Mill Co., 194 N.C. 756."Williams v. Strauss, 210 N.C. 200 (201).
In Mercer v. Williams, 210 N.C. 456 (458-9), the rule is again stated: "The general rule is, that a landlord is not liable to his tenant for personal injuries sustained by reason of a defective condition of the demised premise, unless there be a contract to repair which the landlord undertakes to fulfill and does his work negligently to the injury of the tenant. Fields v. Ogburn, supra (178 N.C. 407); Colvin v. Beals,187 Mass. 250."
In the Fields case, supra, Hoke, J., goes into the subject with thoroughness, citing a wealth of authorities, and says at p. 408: "In the absence of express stipulation on the subject, there is usually no obligation or assurance on the part of the landlord to his tenant that the premises will be kept in repair, or that the same are fit or suitable for the purposes for which they are rented. It is true that in the case of latent defects of a kind that import menace of appreciable injury when these are known to the landlord, and of which tenant is ignorant and not likely to discover on reasonably careful inspection, liability has been recognized *Page 421 
and recoveries sustained both on the ground of negligent breach of duty, and at times for fraud and deceit. . . . In Colvin v. Beals, 187 Mass. 250
(252), injury from a defective railing on a piazza, recovery was denied, the Court stating the general position applicable, as follows: `The general rule in this commonwealth must be considered as settled, that a tenant cannot recover against his landlord for personal injuries occasioned by defective condition of the premises let, unless the landlord promises to repair, makes the repairs, and was negligent in making them.'" Miles v.Janvrin, 196 Mass. 431 (439).
The judge in the court below charged the jury correctly, to which no exception was taken, as follows: "Now, gentlemen of the jury, the court instructs you, as a matter of law, the general rule is: `That the landlord, that is, the defendant in this case is not liable to the tenant for personal injury (and "tenant" includes his family and wife), the landlord is not liable to the plaintiff for injuries from the demised premises, that is, the defendant, as a general rule of law, would not be liable to the plaintiff for any personal injury sustained by reason of any defective condition there around the premises, but if there is a contract to repair and the landlord undertakes to fulfill the contract and does the work negligently to the injury of the plaintiff, in that case, gentlemen of the jury, the landlord would be liable.'"
In the present action there was an express stipulation between the landlord and the tenant to repair. In the lease is the following: "The lessor agrees to keep the building in repair during the said term except as against injuries thereto not due to natural causes."
C. E. Livingston, the husband of plaintiff, testified — unobjected to: "I made a contract with Mr. (Edward R.) Sutherland for the lease of a house, part of which was in writing and part verbal. Mr. Sutherland made or agreed to have the steps repaired." Mr. Sutherland signed the lease as agent of the defendant, Essex Investment Company, to make repair. The agency of Mr. Sutherland is in no way denied.
It will be noted that defendant did not demur, but answered the complaint.
In Ricks v. Brooks, 179 N.C. 204 (209), it is stated: "This case has been tried upon its merits, and the plaintiff has won upon the facts. Defendant showed by his answer that he understood the cause of action, and has actually supplied the omission, if any, in the complaint. If he found it too meager in its allegations, he had a remedy by asking that it be made more definite and certain by amendment. Rev., 496; Blackmore v. Winders,144 N.C. 212; Allen v. R. R., 120 N.C. 548; Conley v. R. R., 109 N.C. 692;Oyster v. Mining Co., 140 N.C. 135. Instead of availing himself of the several remedies above mentioned, the plaintiff trusted his case to the jury upon the issue, and having had a fair chance *Page 422 
to present it, his motion does not commend itself to our favorable consideration."
N.C. Code, 1939 (Michie), sec. 537 (former Rev., 496), is as follows: "If irrelevant or redundant matter is inserted in a pleading, it may be stricken out on motion of any person aggrieved thereby, but this motion must be made before answer or demurrer, or before an extension of time to plead is granted. When the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defense is not apparent, the court may require the pleading to be made definite and certain by amendment."
The plaintiff's evidence on the trial was substantially the allegations set forth in the complaint, the defendant's evidence was to the contrary. The issues submitted to the jury were in accordance with the complaint and answer. Defendant neither objected to the issues nor submitted other issues. The case in the court below was tried out on the allegations and denials in the complaint and answer. If the defendant desired more specific and detailed allegations in the complaint as to the charge of negligence, it should have requested the complaint to be made more definite and certain under the statute supra, or requested a bill of particulars under section 534, supra. Having answered, the matter is waived.
In Allen v. R. R., 120 N.C. 548, it is held: "Where a complaint in an action for negligence was defective in not definitely and sufficiently setting out the negligence complained of, objection thereto should have been taken, not by demurrer, but by motion to have the plaintiff make his complaint more definite." Bowling v. Bank, 209 N.C. 463.
If the landlord, having agreed with its tenant to repair the brick steps on the demised premises leading to the dwelling, undertakes to repair said steps through its agent and employees, who do the work in a negligent and careless manner, as a proximate result of which the tenant's wife sustains physical injuries, is the landlord liable in damages? We think so, under the facts and circumstances of this case.
In 16 R. C. L., sec. 565, p. 1045, citing a wealth of authorities, is the following: "It is the generally accepted rule that whether there is a covenant to repair or not, the lessor will be liable for injuries caused by his negligence or unskillfulness or that of his servants and employees in making repairs to the leased premises, and it has been held that a landlord undertaking to repair leased premises at the request of his tenant, when under no obligation so to do, and who assures his tenant that such repairs have been made, is answerable to the tenant if the latter, relying on such assurance, suffers injury by reason of the defects not being properly repaired. . . . (p. 1046). But if the landlord voluntarily repairs and actually enters upon the carrying out of his scheme of repair, he will be responsible for the want of due care in the execution of the *Page 423 
work, upon the principle of liability for negligence, without reference to any question of implied contract to repair, or implied consideration. Even in those jurisdictions where it is held that a tenant cannot sustain an action of tort for personal injuries received by him because of the breach of the landlord's covenant to keep the premises in repair, if the landlordmakes the repairs in accordance with the agreement, and is negligent inmaking them, the tenant may recover for resulting personal injuries."
(Italics ours.) Miles v. Janvrin, supra.
The same rule is set forth in 32 American Jurisprudence, "Landlord and Tenant," sec. 724, p. 599, citing a wealth of authorities. In section 741, pp. 618-19, the rule is thus stated: "It is a well-established principle that one cannot relieve himself of the consequence of neglect in the performance of his agreement by employing an independent contractor to do the work, and the courts generally agree that a landlord who undertakes to make repairs or improvements for the benefit of his tenant, whether he is obligated by law or by agreement with the tenant to do so, or whether he does so gratuitously, cannot relieve himself from his liability for negligence in making such repairs or improvements by employing an independent contractor to do the work; if he does employ an independent contractor who does the work so negligently as to cause injury thereby, the landlord is liable to the same extent as if he had done the work himself. The landlord in making repairs and improvements on the demised premises owes a duty of reasonable care to the occupying tenant which he cannot escape by placing the work with an independent contractor, especially if the work to be done is attended with danger to the tenant. The rule extends in favor of members of the tenant's family and his guests and invitees, — those to whom the landlord owes the same duty of care and protection from negligent injury as he does to the tenant."
The defendant contends that he "had discharged his liability in employing a competent person to do the work, whether that competent person served as his servant, agent or as an independent contractor." We cannot so hold.
In Doyle v. Franek, 118 N.W. (Neb.), 468 (469), a landlord undertook to move a dwelling occupied by the plaintiff and removed the front steps which were immediately replaced but in a negligent manner resulting in injuries to the plaintiff, and the Court said: "The defendant argues that because the steps were removed and replaced by an independent contractor, or without any direction from or knowledge of the defendant, he is thereby relieved from liability. It is urged the negligence complained of was not the neglect of the defendant, but that of an independent contractor. We do not think this contention is sound. Conceding that the relation of landlord and tenant existed between the parties to this action, we think it is clear that the landlord is not relieved *Page 424 
of liability for injury to his tenant by the fact that he employed an independent contractor to perform the work of moving the house. So long as the relation of landlord and tenant existed between the parties, the landlord owed a duty to the defendant not to do, or cause to be done, anything which would render the premises dangerous and unsafe for his tenant. Where one owes an absolute duty to another, he cannot acquit himself of liability by delegating that duty to an independent contractor (citing authorities). In Peerless Mfg. Co. v. Bagley, 126 Mich. 229, 53 L.R.A., 287, it was held: `Where a landlord undertakes to make repairs or improvements for his tenant, he cannot relieve himself of the consequences of neglect in the performance of his agreement by employing an independent contractor.'"
The rule as set out in Restatement of the Law of Torts, sec. 420, p. 1135: "A lessor of land who employs an independent contractor to make repairs which the lessor is under no duty to make, is subject to the same liability to the lessee and others upon the land with the consent of the lessee for bodily harm caused by the contractor's negligence in making or purporting to make the repairs as though the contractor's conduct were that of the lessor."
In Vollrath v. Stevens (Mo.), 202 S.W. 283, a carpenter was engaged by a landlord to repair steps on leased premises and the following was stated by the Court, at p. 286, par. 14: "The evidence shows that when plaintiff complained of the defective condition of the premises in 1909, defendant's agent sent a carpenter to make the repairs and defendant says that, as the carpenter furnished his own materials and used his own methods in doing the job, he was an independent contractor, and for that reason, if the result of his work was that the repairs were not properly made, the defendant is not liable. This contention of the defendant is not well taken. If the lessor undertakes to have repairs made when he has not covenanted to do so, a duty is cast upon him to see that the repairs are made so as not to injure the tenant, and the rule concerning independent contractors has no application." Blake v. Fox, 17 N.Y. Supp., 508.
W. R. Douglas testified, in part: "I know where the Livingston house is and did some work out there. I started the work November 24, 1937, and finished it the 4th day of December, 1937. Mr. Sutherland had me to do the work. I did the work by the hour. . . . Mr. Sutherland took me out there and showed me what repairs he wanted and we went back afterwards and he said we should paint the entire outside. . . . I examined the steps briefly and Mr. Sutherland was with me and we decided there was nothing sufficient to warrant any work being done on them. . . . Mr. Sutherland engaged me to go out there and do the repairs. Mr. Sutherland was probably out there a couple of times during *Page 425 
the process of the work." The foregoing constitutes all of the testimony of the witness, W. R. Douglas, as to the contract. The witness, E. R. Sutherland, did not attempt to testify as to the terms of his contract with W. R. Douglas. The only testimony from him relative to that is as follows: "In dealing with Mr. Douglas I did not retain any control over the method he used."
In Aderholt v. Condon, 189 N.C. 748 (755), we find: "The test of independence and agency or servant is laid down in 14 R. C. L., pp. 67-8, as follows: `The vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor.'"Greer v. Construction Co., 190 N.C. 632 (637).
In Rosenberg v. Zeitchik, 101 N.Y. Suppl., 591 (592), we find: "Under the circumstances of this case, it was the duty of the landlord to make the repairs, and the fact that he made a contract with someone to do the work does not relieve him from liability for negligence to his tenant."
The work that Sutherland, the agent of the defendant, employed Douglas to do, was in the relation of master and servant. He was not an independent contractor. The principle is well settled: Qui facit per alium facit perse. He who acts through another acts himself — i.e., the acts of an agent are the acts of the principal. Broom, Max., 818, et seq.; 1 Bl. Comm., 429; Story, Ag., sec. 440. We see no good reason why a landlord should be an exception to the ordinary rule of master and servant. We can find nowhere in the pleadings or evidence in the court below where defendant contended that Douglas was an independent contractor. Defendant's defense was: (1) Denial that the defendant made an agreement to repair the steps, that the defendant did not employ Douglas or anyone else to repair the steps, and that the steps were not repaired at all. (2) That the plaintiff was guilty of contributory negligence.
Counsel for defendant tendered no issue relating to the principle of independent contractor, did not except to the issues submitted by the court, did not ask for any special instruction relating to the principle of independent contractor, made no contention that this relationship existed, and at the close of the judge's charge, after he had stated all of the contentions of the parties without embracing in such contentions for the defendant any reference to the doctrine of independent contractor, the court directed this question to counsel for all parties: "Is there any other evidence or any other contentions to which you wish to call the court's attention, gentlemen (of counsel)?" To this question, counsel for the defendant made no answer. *Page 426 
It is well settled, as stated in McIntosh Prac. and Proc., at pp. 803-4: "When the case has been tried below on a certain theory, it must be heard on appeal upon the same theory, and the party will not be allowed to change his ground between the lower court and the appellate court. The erroneous admission of a proposition of law in the lower court will not be binding, but the appellate court has respect to the theory upon which the case was tried. Any other course would be unjust to the judge who tried the case and to the appellee, and the party, having selected the ground upon which he chooses to fight, should not be allowed to have another chance, after losing, by shifting his ground. When the case was tried upon the theory of a tort, or upon a certain theory of damages, the appellate court will not determine it upon a different theory which might have been adopted."
The plaintiff's evidence as to defendant's duty to repair the steps on which plaintiff was injured, was denied by defendant. This was a question for the jury. All the evidence was to the effect that Sutherland was the agent of defendant. He had the authority to make the contract with the plaintiff for repairing the steps and signed the contract for defendant. The witness Hollingsworth testified, in part, for plaintiff: "I am a mechanic, carpenter and bricklayer. . . . I examined the steps the next morning and found there were two loose bricks that you could lift out in the last flight of steps a little bit more than half down. It was on the second flight. I replaced the bricks myself. Mr. Livingston asked me if I could fix them and I said `Yes,' and went out there and cleaned them off and put them back with cement. The material I found between the brick was lime and sand because I cleaned them of without any trouble. No cement. I have done work laying brick. The brick sloped over at least an inch over the foundation that the brick was laid on." This evidence was not objected to by defendant and was permissible under plaintiff's complaint. The court below charged so carefully and accurately the law applicable to the facts that defendant made no exception to same. If the defendant in a proper prayer for instruction did not request the court below to charge subordinate features of the case, it is now too late for defendant to complain.
In Peterson v. McManus, 210 N.C. 822 (823), the law is thus stated: "If they desire special instructions upon any phase of the law involved, not given in the general charge, they should have filed written request therefor. Harris v. Turner, 179 N.C. 322 (325), and cases there cited."
From a careful review of the record and the able briefs of the parties, the exceptions and assignments of error made by defendant cannot be sustained. We can see on the record no prejudicial or reversible error.
No error. *Page 427